### GEORGE P. BROCK v. CHARLES WEISS.

1. The maxim *ignorantia legis neminem excusat* is not universally applicable, but only when damages have been inflicted or crimes committed.
2. B, a tenant, owing rent, agreed, for a sufficient consideration, to pay it to A provided he should not be compelled to pay it to the assignee in bankruptcy of his landlord, to whom such rent was really due, but B was in doubt as to his legal right. *Held,* such contract was legal and enforceable.

On rule to show cause.

This action was brought upon an agreement of which the following is a copy:

" I, Charles Weiss, promise to pay to Mrs. Elizabeth Brock the sum of six hundred $00/100$ dollars in case I should not be

compelled, by Statts S. Morris to pay the annually rent for the park, lying and being between Morris avenue and Bruce street, bording on Court street, to wit, for the term from the first of May, 1872, to the first day of May, 1873. If I should be forced to pay part of this six hundred dollars, this part I shall deduct from the said six hundred dollars, and the balance shall be paid by me to said Mrs. Elizabeth Brock.

" Newark, N. J., Dec. 27, '73.
                " (Signed)          CHARLES WEISS."

[*Endorsed.*] " NEW YORK CITY, COUNTY AND STATE OF NEW YORK,

                        " December 20, 1878.
" I do hereby assign, sell and transfer and set over unto George P. Brock all my right, title and interest in and to the within promissory note, dated the 27th day of December, A. D. 1878, for and in consideration of the sum of one dollar duly paid to me by the said George P. Brock.
                " (Signed)          ELIZABETH BROCK.
                " (Signed)          PHILIP BROCK."

It appeared at the trial that the consideration of the foregoing promise was the sale of a certain interest in the brewery business made by the promisee, Mrs. Elizabeth Brock, to the promisor, Mr. Weiss.

It also appeared that Philip Brock, the husband of the said Elizabeth, had been the owner of the park mentioned in the agreement, and that he had rented it for $600 a year to the said Weiss, and that said Brock became a bankrupt on the 16th of May, 1872.

Argued at February Term, 1882, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, REED and MAGIE.

For the plaintiff, *Henry F. Goeken.*

For the defendant, *C. Borcherling.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. There is but a single legal point to be considered and decided in this case, and that point is the product of this conjuncture :

The defendant, Weiss, rented a certain park from one Philip Brock from the 1st of May, 1872, to the 1st of May, 1873, at the rent of $600 for the year, and before any part of such rent had accrued Brock became bankrupt, so that, by force of law, the right to such rent as it accrued became vested in the assignee in bankruptcy. Notwithstanding this latter circumstance, Weiss paid the rent to Brock, apparently in the belief that the same was legally due to him. In December, 1873, Weiss purchased of Mrs. Elizabeth Weiss the interest possessed by her in a certain brewing business, and as at that time doubts seem to have arisen whether the payment of the rent of $600 to Brock, the husband, was valid, and in order to shield himself from the danger of being liable for the same money to the assignee in bankruptcy, it was made a stipulation of the purchase above mentioned that he should retain the sum of $600, part of the purchase money of the before-mentioned business, and should obligate himself to pay it to Mrs. Brock only in the event of his not being obliged to pay it to the assignee. In pursuance of this understanding the written promise in suit was entered into. Weiss was not called upon to pay the money to the assignee, and the jury have found that, in point of fact, he paid, at best, only a small part of the moneys in question to that officer. At the time of the commencement of this suit the claim of the assignee had become barred by the statute of limitations.

It is obvious, from this statement of facts, there is no merit whatever in the defence. By the arrangement with Mrs. Brock the defendant was repaid the rent due from him for these premises, so that, in fair dealing, he was bound to pay such rent either to the assignee or to Mrs. Brock, or to the plaintiff, who has acquired her rights. The jury have found that the larger part of the moneys thus due remains in his hands, and in that measure have rendered a verdict against

him. Can he evade this moral responsibility by virtue of any legal principle?

The only ground urged is that the agreement, which is embodied in the writing on which this suit rests, is opposed to the spirit and policy of the Bankrupt acts. There is no indication, in any part of the transaction, of a purpose to conceal this property or to put it out of the way of the assignee. The arrangement which was made left the debtor, Weiss, in a state of neutrality with respect to the claims of Mrs. Brock and the claims of the assignee, for it made no difference to him whether he paid the debt in question to the one or to the other. These persons had no design, and the transaction had no tendency, to do a wrong to the creditors of the bankrupt. If it be said that a knowledge of the law is to be imputed to these parties, and therefore it is to be presumed that they knew it was the duty of the defendant to pay this money to the assignee, the answer is, that such implication would be to push the legal maxim in question to an unreasonable extreme. The rule " *ignorantia legis neminem excusat* " has not that extreme reach which the application of it to the instance in question would assert. It is true that the law will not permit the excuse of ignorance of the law to be pleaded for the purpose of exempting persons from damages for breach of contract, or from punishment for crimes committed by them, but on other occasions and for other purposes it is evident that the fact that such ignorance existed will sometimes be recognized so as to affect a judicial decision. In the case of *Queen* v. *Mayor, &c., of Tewkesbury*, L. R., 3 Q. B. 629, it is said : " The maxim is *ignorantia legis neminem excusat*, but there is no maxim which says that, for all intents and purposes, a person must be taken to know the legal consequences of his acts ; " and in *Spread* v. *Morgan* 11 H. L. Cas. 588, 602, Lord Westbury, C., referring to the equitable doctrine of election, remarked that although " it is true, as a general proposition, that knowledge of the law must be imputed to every person, it would be too much to impute knowledge of this rule of equity." And it is to be remembered that the

uncertainty of the minds of the parties with respect to the law when a settlement and compromise is made of doubtful legal rights, forms the consideration on the one side and the other, and is the very foundation on which the affair is based. I can see no legal default in the adjustment of their rights, which in this case was made by these parties.

The verdict should not be disturbed.